Thank you, Your Honors. Frank Sproul is appearing for petitioners. In this particular case, I'd like to address the adjustment issue, which I think is the principal appellate issue, and I'd like to make two very distinct points. The first is a rather broad one, which I believe that 1255C, which is the preclusive statute we're talking about, simply doesn't apply to this rather unique other section of law, the diversity lottery adjustment. Our second argument is more specific, which is if 1255C does apply, then filing a bona fide good faith asylum renders an alien in lawful status. So as to my global argument, the section that we're talking about that the board relied on is 1255C, which is what I would call a negative definition statute or a preclusive statute. It sets forth who's not eligible. It's referencing A-1, which basically says you're eligible for adjustment if there's a visa available and you're not inadmissible. It descends to the particulars. It talks about a whole series of people who are not eligible. The diversity class is not there. Unlike the position of the board where they said, well, gee, if they wanted to say it, they would have here. If they wanted to say the diversity people don't apply, they would have included them. That's a rather basic rule of statutory construction. That's our essential quarrel with the BIA, is that they don't deal with it. They just assume this applies. We say it doesn't. We say the BIA decision is completely, you know, it's wrong at birth. It's completely doesn't conform to classic rules of statutory construction. We buttress that by the fact that the executive branch themselves, when they were trying to – I think on page 18 of my brief where there's a hypo in the Federal Register where they're trying to make sense of this morass of the grandfathering visas, they use an example of suppose someone had a visa filed many years before, before April 30, 2001, and then they were suddenly eligible for the diversity statute, that person would be eligible. Well, that flies in the face of 245C, which specifically says if you're out of status, you can't adjust. So the idea that it's clear that diversity statute is under 245C isn't supported by the statute. That's our first argument, is that this – you know, diversity is a rather odd bird. It's not mentioned in the sections of 245I who's eligible. I mean, one can argue whether or not national origin, diversity is something that we need, but that's the law. It wasn't repealed by IRA-IRA, and the preclusive section doesn't mention it. So I would say on the plain reading of the statute, a diversity applicant is eligible. They're eligible under 245A1, which is one, the visa's available, and they're not inadmissible, because then we extrapolate to the other section of law that says a valid asylum tolls your unlawful presence. Thus, you're not inadmissible. So that's our first argument. Our second argument, which is sort of the way the Board deals with it, which is – takes it as a given that 245C does apply, and that's how diversity applicants adjust. And our argument is that it's rather irrational to say that someone who files for asylum does not have unlawful presence, but they're not lawfully – they're not in lawful status. That's a distinction that I would submit is sort of irrational. And under the Chevron analysis, which, of course, is big in the parlor for me, because there is a BIA case that's contrary to my position, I don't think it's rational, because everybody who's adjusting must be admissible. And the grounds of inadmissibility have been – it's been shown, and the Board has admitted it in other cases. And the statute itself says if you file for asylum, it tolls your unlawful presence. So my position would be, whether you look at it globally or specifically, this unique class of people, the diversity applicants, should adjust. And the immigration judge was correct. You know, these parties prevailed initially. So I would submit it on that. All right. Very good. May it please the Court. Ada Bosk on behalf of the Attorney General. The Board recently found Ms. Anakin failed to establish she was eligible for adjustment of status, because that is what she was seeking, because she failed to continuously maintain her lawful status. To adjust status – and that is, again, what Ms. Anakin was seeking. She wasn't seeking a visa. She had it. So the idea that because she had a visa, she was eligible to apply for adjustment of status is incomplete. Visa is one of the things that you need to adjust status. But the statute plainly also provides that to be eligible for adjustment of status, you also have to show that you were in continuously lawful status when you applied. And the regulations define lawful status. Ms. Anakin was here as a student, and her student status expired – I'm sorry, it says Michael – her student status expired in August of 1998. She did not apply for adjustment of status until four years later. So she was not in lawful status when she applied. What she was seeking was to show that there was some exception that excused the lapse in her status. And the argument that she presented to the board was that because her husband filed for asylum while she was in status, the – that was the technical reason why she – her status had last. The board, in its precedential decision, L.K., discussing the applicable regulation which defines technical reason, found that once the agency – and at that point it was the INS, the Immigration and Naturalization Service – once it refers a matter to the immigration court, the agency has acted, and therefore there is no longer a technical reason for the lapse. Ms. Anakin's husband's asylum application was referred in September of 1998. So again, the – and if her lapse in status was excused, it was only excused for one month. She did not seek asylum until four years later. The Petitioner has pointed to 1255i, and that section is simply not applicable to her. It's expressly not applicable to someone who only has a diversity visa, which is all she has. She does not have an I-130, an immediate relative visa, and she doesn't have an I-140, an employment-based visa. And I, as well as K, which is the other section of 1255 that they rely upon, specifically apply to individuals who have those kinds of visas. Her only visa is the diversity visa. And in order to establish she was eligible for adjustment of status, she had to satisfy each of the requirements, one of which was continuous lawful presence. I'm sorry, continuous lawful status. The Board's interpretation of the applicable regulation in L.K. is reasonable, not only because the Board explained that when the INS refers or now DHS refers an action to the immigration court, the administrative function is complete. It is also – the Board's reading is also consistent with the regulatory scheme, which consistently and – consistent with the statute distinguishes lawful – lawful presence. Petitioner's counsel is correct. Lawful – unlawful presence is a factor of admissibility, but that's only one provision in the adjustment of status statute. There's an entirely separate section, which is what Ms. Anakin lacked, of continuous lawful immigration status. The regulations also distinguish between presence and status. Somebody can be here, but not necessarily be in status, and that is her situation. And the courts have consistently recognized that there is a difference between those two things. Just because you're here, for example, and can work, have authorization to be present in the United States, does not mean that you also possess a lawful immigration status. So unless the Court has any questions. I would like to turn to the asylum. Sure. To the asylum claim for the husband, and explain – and explain why the Board's analysis is adequate. It's very surprising that they got down and said, well, we had a banker killed and we had a journalist killed, and Mr. Anakin is neither a banker nor a journalist, and therefore there's no way he's going to get killed. That's not the kind of analysis we typically see. And I would actually say that that's not the analysis that the Board did. The Board's first analysis – the Board's primary analysis is that Mr. Anakin simply failed to meaningfully challenge the immigration judge's decision. The immigration judge – he – in his brief – Sort of a procedural default? Right. A waiver, or I guess in this Court's words, a failure to exhaust properly. Mr. Anakin, in his brief to the Board, argued that the immigration judge had failed to find past persecution. Well, that's not true. The immigration judge expressly and repeatedly found past persecution. She denied asylum because she found a change in country conditions. She looked at – It's kind of hard to fault him for that. Excuse me? It's rather hard to fault him for that, I mean, in a sense. I mean, he should have – certainly it was an inartfully drafted brief, but he doesn't – do you think he forfeits the presumption of past persecution? Well, the Board – that is an argument that he could have made to the Board, but he didn't argue that either. He simply argued to the Board that the immigration judge's analysis was not sufficient. And the Board said, well, you – and this Court has generally recognized that you haven't identified any evidence that the immigration judge ignored. You haven't addressed any of the specific findings the immigration judge did make. The immigration judge looked at the most recent country report submitted by DHS and found that Mr. Anakin was not similarly situated to the kinds of individuals that are subject to contract killings. The immigration judge noted that Mr. Anakin himself admitted that there had been a significant change in the government from when he left in 1997. The immigration judge also noted that Mr. Sozin, the immigration – excuse me, the individual that Mr. Anakin feared, there was no evidence that he was present anywhere or interested in Mr. Anakin. None of those specific findings did Mr. Anakin address in his brief, leaving the Board to guess at what exactly he found insufficient in the immigration judge's finding. And that is – and so they decided that he did not fail – that he failed, excuse me, to meaningfully challenge the immigration judge's decision. Roberts. Okay. Thank you. Thank you. Thank you. Rovattle. Very, very briefly, Your Honors. I just want to make it abundantly clear. We're – our position is that Petitioner's eligibility for adjustment is 1255a, 1 and 2. That C does not apply. A plain reading of the statute compels that conclusion. C is a preclusive section. What's missing? The diversity applicant. Finally, since I was the author of the inartfully drafted brief, I'd like to point out that we made it very clear that it was all about change country conditions. And I said that the, you know, the judge only made reference to the change country conditions in the most meaningful way at the time of the IJ decision. President Putin and unabashed former KGB parachute was in power and the specter of KGB influence of government was a matter of public record. So certainly we addressed the paucity of the IJ's. Well, I gather your point in front of the BIA is that you didn't think that the factual finding as to the well-founded fear was supported, right? I think I was hamstrung by the fact that a number of years had passed. You know, we had – there's no undumbrian influence. There has been changed circumstances in the country. And so my essential quarrel with the IJ was whether or not she addressed that. I mean, I couldn't really argue that things hadn't changed a great deal. After all, a former president didn't look into the soul of President Putin, liked what he saw. So I'll submit it on that. All right. Very good. Thank you both for your arguments. And we will be in recess for approximately 10 minutes.
judges: Thomas, Gould, Bybee